# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Shane Peck,**
**Petitioner Below, Petitioner**

**vs) No. 14-0421** (Kanawha County 13-P-374)

**Marvin Plumley, Warden,**
**Huttonsville Correctional Center,**
**Respondent Below, Respondent**

**FILED**

March 16, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Shane Peck, by counsel William C. Forbes, appeals the Circuit Court of Kanawha County's April 2, 2014, order denying his petition for writ of habeas corpus.[1] Respondent Marvin Plumley, Warden, by counsel Laura Young, filed a response.[2] Petitioner filed a reply. On appeal, petitioner alleges that the circuit court erred in denying habeas relief on his claims of an involuntary plea, ineffective assistance of counsel, and violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963).

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In March of 2011, petitioner's victim, Geraldine Gibson, was found bound and gagged in her home. She stated that two men entered the home, knocked her down, bound and gagged her, pointed a gun at her, and then searched her house. According to the victim, petitioner and his accomplice took items totaling more than $1,000 from the home. She later identified petitioner as one of her assailants. Following his arrest and indictment, petitioner accepted a plea offer from the State on the morning of trial in May of 2011. According to the agreement, the State would recommend a sixty-year sentence if petitioner would plead guilty to one count of burglary, one

---

[1]Petitioner's counsel filed his brief pursuant to the United States Supreme Court of Appeals' decision in *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396 (1967).

[2]The petition for appeal originally listed the warden of Mount Olive Correctional Complex, David Ballard, as respondent. However, petitioner has subsequently been transferred to Huttonsville Correctional Center. Pursuant to Rule 41(c) of the West Virginia Rules of Appellate Procedure, the appropriate party has been substituted in the style of this matter.

count of assault during the commission of a felony, and one count of first degree robbery. During the plea hearing that same day, petitioner stated that he understood the terms of his plea agreement and acknowledged that the circuit court was not bound by the State's recommended sentence. Thereafter, the circuit court sentenced petitioner to a determinate term of incarceration of seventy-five years for his conviction of first degree robbery, a concurrent term of incarceration of two to ten years for his conviction of assault during the commission of a felony, and a consecutive term of incarceration of one to fifteen years for his conviction of burglary.

In July of 2013, petitioner filed a petition for writ of habeas corpus in the circuit court. The circuit court thereafter appointed counsel to represent petitioner. In November of 2013, petitioner's counsel filed an amended petition for writ of habeas corpus alleging that the prosecution failed to provide petitioner with evidence, that petitioner was mentally incompetent at the time of the crime and at the time he accepted the plea agreement, and that pre-trial publicity violated petitioner's right to a fair trial and proper venue. Moreover, petitioner alleged that his trial counsel was ineffective in the following ways: (1) by failing to adequately explain the plea offer, including the fact that the recommended sentence was not binding on the circuit court; (2) in failing to move for a change of venue; and (3) in failing to move for a mental competency evaluation of petitioner. Following an omnibus evidentiary hearing on February 13, 2014, the circuit court ultimately denied petitioner habeas relief. It is from the resultant order that petitioner appeals.

This Court reviews appeals of circuit court orders denying habeas corpus relief under the following standard:

> "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syllabus point 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, *State ex rel. Franklin v. McBride*, 226 W.Va. 375, 701 S.E.2d 97 (2009).

On appeal, petitioner reasserts the same claims that were rejected by the circuit court. Upon our review and consideration of the circuit court's order, the parties' arguments, and record submitted on appeal, we find no error or abuse of discretion by the circuit court. Our review of the record supports the circuit court's decision to deny petitioner post-conviction habeas corpus relief based on the errors he assigns on appeal, which were also argued below. Indeed, the circuit court's order includes well-reasoned findings and conclusions as to all of the assignments of error raised herein. Given our conclusion that the circuit court's order and the record before us reflect no clear error or abuse of discretion, we hereby adopt and incorporate the circuit court's findings and conclusions and direct the Clerk to attach a copy of the circuit court's April 2, 2014, "Final Order Denying Petition For Writ Of Habeas Corpus" to this memorandum decision.

For the foregoing reasons, we affirm.

2

Affirmed.

**ISSUED:**  March 16, 2015

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

STATE OF WEST VIRGINIA
Ex rel. SHANE PECK,
      Petitioner,

v.
                                  Civil Action No. 13-P-374
                                  Judge Louis H. Bloom

DAVID BALLARD, Warden,
MT. OLIVE CORRECTIONAL CENTER,
      Respondent.

## FINAL ORDER DENYING
## PETITION FOR WRIT OF HABEAS CORPUS

On February 13, 2014, came the parties for an omnibus hearing on the Petitioner's *Amended Petition for Writ of Habeas Corpus.* The Petitioner, Shane Peck, appeared by videoconference and by counsel, C. Casey Forbes, who appeared in person, and the State of West Virginia appeared by counsel, James Bailey, who appeared in person, and Fred Giggenbach, who appeared by telephone. This is the Petitioner's first habeas. The Petitioner filed a *Petition under W. Va. Code § 53-4A-1 for Writ of Heabeas Corpus* on July 10, 2013. Subsequently by order entered on July 23, 2013, the Court appointed Casey Forbes to represent the Petitioner. On November 15, 2013, the Petitioner by counsel filed a *Losh List* and an *Amended Petition for Writ of Habeas Corpus* setting out the following assignments of error: (1) ineffective assistance of counsel resulting in the State's plea offer; (2) prejudicial pre-trial publicity violating his right to a fair trial and proper venue; (3) mental incompetence at the time of the underlying criminal act and at the time of the acceptance of the plea offer; and (4) prosecutorial failure to provide evidence, which violated his right to a fair trial.

1

# FINDINGS OF FACT

1. On March 3, 2011, Geraldine Gibson was found bound and gagged in her home in Kanawha County, WV. She stated that two men had entered her home, knocked her down, bound and gagged her, pointed a gun at her, and then searched her house. She reported several items taken, valued in total to be worth more than $1,000. She later identified Shane Peck as one of the assailants.[1] Ms. Gibson died after the Petitioner accepted a plea agreement.[2]

2. The Petitioner was arrested, appointed counsel (Matthew Victor), indicted, and, on the day of trial May 16, 2011, was presented with a plea offer wherein the State would recommend a 60 year sentence if the Petitioner would plead guilty to Breaking and Entering, Assault during the Commission of a Felony, and First-Degree Robbery. Pursuant to the plea offer, the State would also recommend that the sentence run consecutively to any prior or future sentences. At the time the plea offer and agreement, the Petitioner was serving a sentence on several other charges.[3]

3. At the plea hearing on May 16, 2011, the Petitioner stated that he understood the terms of his plea and understood that the Court was not in any way bound by the State's recommended sentence.[4]

4. The Court conducted an extensive colloquy during the plea hearing, addressing and ensuring the Petitioner's understanding of the plea agreement and the Petitioner's competence. Additionally, the State and Mr. Victor described the plea agreement to the Petitioner, who agreed to the terms. The Petitioner accepted the plea in spite of Mr. Victor advising against it.[5]

5. On July 27, 2011, the Court sentenced the Petitioner as follows:

---

[1] *See* Peck Test., Plea Hr'g Tr. 25–28, May 16, 2011.
[2] Victor Test., Omnibus Hr'g Tr. 33, February 13, 2014.
[3] Plea Hr'g Tr. 22–23.
[4] *See, e.g.,* Plea Hr'g Tr. 6.
[5] Plea Hr'g Tr. 3–5.

**COUNT FOUR** [First Degree Robbery with a Firearm]: to the penitentiary of this State for a determinate term of seventy-five (75) years, with credit for time served of one hundred twenty-three (123) days;

**COUNT FIVE** [Assault during the Commission of a Felony]: to the penitentiary of this State for an indeterminate term of not less than two (2) nor more than ten (10) years, said sentence is to run concurrent to the sentence imposed in Court Four. . . .

**COUNT SIX** [Burglary]: to the penitentiary of this State for an indeterminate term of not less than one (1) or more than fifteen (15) years, said sentence is to run consecutive to the sentences imposed in Counts Four and Five. . . .

The Court further **ORDERED** that the sentences imposed in Counts Four, Five, and Six . . ,. shall run consecutive to the sentences imposed in Felony Indictment Numbers 11-F-115, 11-F-144 and Misdemeanor Indictment Number 11-M-25. The defendant's sentence in Felony Indictment Number 11-F-409, however, is concurrent with the sentences contained in Felony Indictment Number 11-F-319.[6]

6. The parties appeared before this Court for an omnibus hearing on February 13, 2014, and Mr. Victor and the Petitioner testified.

7. At the onset of the omnibus hearing, the Court and the Petitioner's counsel made inquiry, on the record, of the Petitioner regarding the waiver of potential grounds for habeas relief. The Petitioner testified that he knew and understood each element of the possible grounds for habeas relief and that he did in fact make a knowing and intelligent waiver of all possible grounds not raised herein, as defined in *Losh v. McKenzie*, 166 W. Va. 762, 277 S.E.2d 606 (1981).

8. At the omnibus hearing, the Petitioner testified that Mr. Victor advised him one of the possible consequences of a mental competency exam is being sentenced to a mental institution.[7] Mr. Victor testified that he could not recall specifically what he told the Petitioner, but testified that he typically explains and describes possible consequences of mental competency evaluations

---

[6] Sentencing Order, Case No. 11-F-319, July 27, 2011.
[7] Peck Test., Omnibus Hr'g Tr. 12, 21.

3

to his clients and that, in his opinion, being sent to a mental institution rather than prison is certainly a possible outcome of a mental competency evaluation.[8]

9. The Petitioner avers that the pre-trial publicity influenced his decision to take the plea.[9] The Petitioner testified, "I have—it's in my motion to discovery of even people badgering me on the Internet, talking about the things that I've done [sic]."[10] Mr. Victor, however, testified:

> I was fully aware of the fact that this case and the prior cases, for that matter, where Mr. Peck was involved, garnered some, well, attention in the media. And I was fully aware of the fact that the jurors would be very carefully asked about their exposure to the media information; and indeed if there were a sufficient number of jurors who could not sit on the jury as an impartial body, I would have asked Judge Bloom at that to change the venue. But we didn't reach that point.[11]

The Petitioner has produced no evidence to confirm or support the alleged internet postings or any other pre-trial publicity.

10. At the omnibus hearing, the Petitioner testified he was no longer taking his prescribed medications for obsessive compulsive disorder, antisocial personality disorder, bipolar disorder, and attention deficit disorder at the time of the omnibus hearing, but the Petitioner also testified, at the time of the plea hearing, he was taking said medications.[12]

11. Regarding the Petitioner's mental competency during the plea hearing, Mr. Victor testified that he had represented the Petitioner for several years and was

> fully aware of Mr. Peck's history, . . . fully aware of Mr. Peck's injuries, but throughout the proceedings Mr. Peck did not display any symptoms that would make him incompetent to stand trial or that would make him incompetent as far as it would have any impact on criminal responsibility. Once more, Mr. Peck, as the

---

[8] Victor Test., Omnibus Hr'g Tr. 25–26.
[9] Peck Test., Omnibus Hr'g Tr. 14.
[10] *Id.*
[11] Victor Test, Omnibus Hr'g Tr. 35:4–12.
[12] Peck Test., Omnibus Hr'g Tr. 11, 18.

4

record may reflect, pled against my advice. And now he's claiming that . . . he was forced into a plea, and that did not happen.[13]

12. Mr. Victor testified he and his investigative team met with the Petitioner fifteen to twenty times and reviewed, explained, and read the entirety of the State's discovery and all of the evidence to Mr. Victor before the plea hearing.[14]

## DISCUSSION

### *Ineffective Assistance of Counsel*

13. With regard to the Petitioner's ineffective assistance of trial counsel allegation, the Petitioner alleges that: (1) Matthew Victor did not adequately explain the plea offer or his rights and that Mr. Victor failed to move for a mental evaluation; (2) but for these deficiencies, the result would have been different; and (3) the Petitioner was led to believe the State's recommendation of a sixty-year sentence was binding on the Court.

14. "In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different."[15]

15. With regard to the first prong of the test, a petitioner must first "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."[16] The petitioner's burden in this regard is heavy because there is a "strong

---

[13] Victor Test., Omnibus Hr'g Tr. 25–26.
[14] Victor Test., Omnibus Hr'g Tr. 31–32.
[15] Syl. pt. 5, *State v. Miller*, 194 W. Va. 3, 6, 459 S.E.2d 114, 117 (1995).
[16] *State ex rel. Myers v. Painter*, 213 W. Va. 32, 35, 576 S.E.2d 277, 280 (2002) (quoting Strickland, 466 U.S. at 690, 104 S.Ct. at 2066); *Miller*, 194 W. Va. at 15, 459 S.E.2d at 126.

5

presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[17]

16. "In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. . . ."[18] Therefore, a reviewing court must ask "whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue."[19] Moreover, counsel's strategic decisions must rest upon a reasonable investigation enabling him or her to make informed decisions about how to represent criminal clients.[20]

17. With regard to the second prong of the test, a petitioner must show that counsel's performance, if deficient, adversely affected the outcome in a given case.[21] Therefore, a petitioner must demonstrate that the complained-of deficiency or errors of counsel resulted in prejudice or a "reasonable probability" that, in the absence of such error, the result of the proceedings would have been different.[22]

18. Finally, in deciding an ineffective assistance of counsel claim, the Supreme Court of Appeals of West Virginia has stated that a court may dispose of such claim "based solely on a petitioner's failure to meet either prong of the [Strickland] test."[23]

---

[17] *Id.* at syl. pt. 4 (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065).
[18] Syl. pt. 6, *Miller*, 194 W. Va. 3, 459 S.E.2d 114.
[19] *Id.*
[20] Syl. pt. 3, *State ex rel. Daniel v. Legursky*, 195 W. Va. 314, 465 S.E.2d 423 (1995).
[21] *Painter*, 213 W. Va. at 36, 576 S.E.2d at 281.
[22] *Id.*
[23] Syl. pt. 5, *Legursky*, 195 W. Va. 314, 465 S.E.2d 416.

6

19. The crux of the Petitioner's ineffective assistance of counsel claim is that the Petitioner misunderstood the terms of the plea agreement. The Petitioner claims that Mr. Victor did not explain to him that the sixty-year recommendation was not binding on the Court.

20. However, the evidence shows that the Petitioner was thoroughly explained the plea agreement terms. First, the State explained during the plea hearing, "The State will . . . recommend a 60-year sentence." Second, after the State and Mr. Victor explained and verified the plea agreement terms, the Petitioner confirmed that the State and Mr. Victor "accurately stated the terms and conditions of the plea."[24]

21. Further, at the plea hearing on May 16, 2013, the Court conducted the following colloquy, which illustrates that the Petitioner was fully aware and advised of the plea agreement and possible sentencing outcomes:

> THE COURT: All right. You understand that the prosecutor's recommendations as it relates to sentencing in this matter is solely in the discretion of the Court? Do you understand that?
>
> DEFENDANT: Yes, sir.
>
> THE COURT: And that in fact if you were to plead guilty to these charges, I don't have to follow their recommendations at all; and if I sentence you differently than they recommend, it is not something you would be permitted to withdraw your guilty plea. Do you understand that?
>
> DEFENDANT: Yes, sir.

22. The Court went on to explain the possible sentences for the crimes, assault during commission of a felony, and burglary:

> THE COURT: I want to go over with you the potential sentences that might be imposed. As to count four, and that is the first degree robbery with a firearm, you could be sentenced to a term of not less than 10 years. There is no upper limit, however, as to what that number might be. It could be any number you could imagine.

---

[24] Plea Hr'g Tr. 5:9–11.

They've recommended 60. It could be more, it could be less, but it would be a number that I would choose just as though a jury had found you guilty of that charge. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: And that while the prosecution again is recommending that these sentences run concurrently, all at the same time, just like if a jury convicted you of only these three charges, I would have the discretion to sentence you to consecutive sentences, one after the other. Do you understand that?

DEFENDANT: Yes, sir, I do.

THE COURT: All right. Now, your attorney has told you that he would—and again I'm clear, if I don't sentence you like the prosecution recommend or meet your expectations or Mr. Victor's expectations or anyone's expectations with regard to sentencing, you will not be able to withdraw your guilty plea so long as they are within the parameters that I've described to you. Do you understand that?

THE DEFENDANT: Yes, sir, I do.[25]

23. The Court then repeated its colloquy:

THE COURT: I'm going to go over this all with you again so that if you have any lingering questions about anything, I want you to please ask me; okay?

. . .

THE COURT: And you understand that I didn't participate in the plea negotiations and that no one is guaranteeing you any certain sentence that the penalties that I described to you are the maximum that might be imposed, and they are within the discretion of this Court to impose them. You understand that?

THE DEFENDANT: Yes, sir.

THE COURT: All right. And if you were to be tried, as I said before, on these charges and convicted only of counts four, five and six, the penalties would be the same. There's no discount for pleading guilty. Do you understand that?

THE DEFENDANT: Yes, sir.

---

[25] Plea Hr'g Tr. 6–7, 8:13–20.

. . .

> THE COURT: And has anyone made any promises to you of leniencies, other than that which is contained in the plea agreement, to induce you to plead guilty against your free will?
>
> THE DEFENDANT: No, sir.
>
> . . .
>
> THE COURT: And you understand the limitations of that plea in that I have final say on sentencing? You understand that?
>
> THE DEFENDANT: Yes, sir.
>
> . . .
>
> THE COURT: Do you have questions about the consequences of a guilty plea, including the penalties that might be imposed?
>
> THE DEFENDANT: No, sir.[26]

24. The Court finds that Mr. Victor acted reasonably under the circumstances by explaining the plea agreement terms to the Petitioner and even expressing his reservations concerning the plea.

25. Regarding the Petitioner's mental competency, the Petitioner's testimony at the plea hearing demonstrates that the Petitioner was mentally competent.[27] Additionally, the testimony adduced at the omnibus hearing demonstrates the same. At the omnibus hearing, Mr. Victor testified he had represented the Petitioner for several years, and Mr. Victor testified the Petitioner, "throughout the proceedings . . . appeared to be lucid, perfectly understanding of what is going on, who the judge is, who I am, who the prosecutor is, who the co-defendant is, who the witnesses are. He understood the . . . jury process. We'd been through the entire procedure over and over and over."[28] Mr. Victor testified he was aware of the Petitioner's brain injuries but did not see the Petitioner "display any symptoms that would make him incompetent to stand trial or

---

[26] Plea Hr'g Tr. 11:5–8, 12, 21–22..
[27] *See* Plea Hr'g Tr. 13–15.
[28] Victor Test., Omnibus Hr'g Tr. 28:7–15.

that would make him incompetent as far as it would have any impact on criminal responsibility."[29]

26. At the omnibus hearing, the Petitioner testified that he had been diagnosed some time ago as or with "bipolar, OCD, antisocial personality disorder, ADD" and that, as a result of said diagnoses, he had "always took [sic] medication [his] whole life."[30] Further, the Petitioner testified that he was on said medications during the plea hearing.[31] Based on the testimony of the Petitioner and Mr. Victor, the Court finds and concludes that Mr. Victor's actions with regard the Petitioner's competency fall within an acceptable range of professionally competent assistance. The Court finds and concludes that Mr. Victor acted reasonably under the circumstances.

## Prejudicial Pretrial Media

27. Next, the Petitioner asserts that media exposure violated his constitutional right to a fair trial under the due process clause and rendered venue in Kanawha County improper under Rule 21 of the West Virginia Rules of Criminal Procedure.

28. Under *State v. Young*, a change of venue will be granted in West Virginia when it is shown that there is a present hostile sentiment against an accused, extending throughout the entire county in which he is brought to trial, but the mere existence of pretrial publicity concerning the alleged offense is insufficient to warrant a change of venue. Rather, the publicity must be shown to have so pervaded the populace of the county in such a manner as to preclude a fair trial.[32]

[29] *Id.* at 25–26.
[30] Peck Test., Omnibus Hr'g Tr 11:15–21.
[31] *Id.* at 23.
[32] 173 W. Va. 1, 311 S.E.2d 118 (1983),

29. Rule 21 of the West Virginia Rules of Criminal Procedure states: "The circuit court upon motion of the defendant shall transfer the proceedings as to that defendant to another county if the circuit court is satisfied that there exists in the county where the prosecution is pending so great a prejudice against the defendant that he or she cannot obtain a fair and impartial trial at the place fixed by law for holding the trial."[33]

30. The Petitioner offers no proof or evidence of media exposure or that it was prejudicial. Further, a jury was never selected and therefore never underwent voir dire. Therefore, the Court is of the opinion venue was proper and the Petitioner's right to a fair trial was not violated.

## Mental Competence

31. The Petitioner asserts that because he suffers from several mental issues, he was not able to voluntarily, knowingly, and intelligently accept his guilty plea. The Petitioner maintains that his several diagnoses of mental deficiencies were put on record before the Court.

32. "To be competent to stand trial, a defendant must exhibit a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and a rational, as well as factual, understanding of the proceedings against him."[34] The test for mental competency to plead guilty is the same as the test for mental competency to stand trial.[35]

33. The plea hearing transcript shows that the Petitioner told the Court about being diagnosed with "HDD, HDAD, OCD, and bipolar."[36] The Petitioner then testified that he was taking medications for said diagnoses during the plea hearing and that the disorders and medications did

---

[33] W. Va. R. Crim. P. 21.
[34] Syl. pt. 2, *State v. Arnold*, 159 W.Va. 158, 219 S.E.2d 922 (1975).
[35] Syl. pt. 2, *State v. Cheshire*, 170 W. Va. 217, 292 S.E.2d 628 (1982).
[36] Plea Hr'g Tr. 14:10.

not affect his ability to know or understand what he was pleading to.[37] Mr. Victor also stated during the hearing that he thought the Petitioner was competent.[38]

34. During the plea hearing, the Court asked the Petitioner numerous questions about whether the Petitioner was sure that he wanted to plead guilty. The Petitioner consistently answered in the affirmative.[39]

35. Further, as discussed above, according to the Petitioner, he has been diagnosed with several disorders and was on medication during the plea hearing. Mr. Victor testified that, during the underlying proceedings and during his past dealings with the Petitioner over several years, the Petitioner has always acted and appeared competent.

36. Thus, the Court finds and concludes that the Petitioner was competent at the plea hearing.

### Failure to Timely Provide Impeachment Evidence

37. The Petitioner avers that he was not provided with statements of Rachel King, Kimberly Milan, and Sandy Slater, as well as fingerprints of his co-defendant, Joseph Gibson, until after his entry of a guilty plea and sentence.

38. Under the West Virginia Supreme Court case of *State v. Hatfield*, "[a] prosecution that withholds evidence[,] which if made available would tend to exculpate an accused by creating a reasonable doubt as to his guilt[,] violates due process of law under Article III, Section 14 of the West Virginia Constitution."[40]

---

[37] *Id.* at 14–15.
[38] *Id.* at 15.
[39] *See generally* Plea Hr'g Tr.
[40] Syl. pt. 4, *State v. Hatfield*, 169 W. Va. 191, 286 S.E.2d 402 (1982); *see also Brady v. Maryland*, 373 U.S. 83 (1963) ("We now hold that suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilty or to punishment, irrespective of the good faith or bad faith of the prosecution.").

39. "There are three components of a constitutional due process violation under *Brady v. Maryland* . . . and *State v. Hatfield* . . . : (1) the evidence at issue must be favorable to the defendant as exculpatory or impeachment evidence; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must have been material, i.e., it must have prejudiced the defense at trial."[41]

40. While, the Petitioner maintains that he was not presented with the statements of Rachel King, Kimberly Milan, and Sandy Slater, as well as fingerprints of his co-defendant, Joseph Gibson, until a year after the plea hearing and maintains that, had he been aware of the evidence, he would not have accepted the plea, Mr. Victor testified that he went over all of the State's evidence "ad nauseam" with the Petitioner:

> THE COURT: Tell me whether or not you went over with him the discovery that was provided by the State so that he would know and understand the State's evidence in the case.
>
> THE WITNESS: Your honor, absolutely, . . . I vividly remember going over the testimony, the statements, the names, the facts. Everything that the State provided me with was at the table in the South Central Regional Jail. Mr. Peck was not only provided with that evidence, the evidence was discussed quite frankly *ad nauseam* at some points. And also Mr. Peck may have had some problems in understanding some language. Those statements were read to him. I don't know what else, what else we could have discussed with Mr. Peck that was not in the evidence. We updated him regularly on what the discovery was, we updated him regularly on what the investigation revealed. He . . . also met with my investigators outside of my presence who also updated him on the problems of the investigation. I think that Mr. Peck was more than fully aware of what was going on in his case. I have absolutely nothing to hid from Mr. Peck in terms of the State's evidence. There was absolutely nothing that was hidden from him, concealed, withheld or anything of that kind.[42]

---

[41] Syl. pt. 2, *State v. Youngblood*, 221 W. Va. 20, 650 S.E.2d 119 (2007).
[42] Victor Test., Omnibus Hr'g Tr. 30–31.

Further, the record includes a *Certificate of Service* indicating that said statements were delivered to Mr. Victor on May 13, 2011. Accordingly, the Court is of the opinion that said statements were available to the Petitioner.

## CONCLUSIONS OF LAW

41. The Court finds and concludes that the Petitioner has failed to meet his burden of proof under *Strickland* for his claim of ineffective assistance of trial counsel. The Petitioner failed to demonstrate that Mr. Victor failed to adequately explain the plea offer or his rights; failed to demonstrate that Mr. Victor's decision to not move for a mental evaluation was deficient under an objective standard of reasonableness or that the result of the proceedings would have been different but for Mr. Victor's alleged unprofessional errors; failed to demonstrate that the pretrial publicity was prejudicial; and failed to demonstrate that Mr. Victor's decision to wait until jury selection—which was preempted by the Petitioner's decision to accept the plea against Mr. Victor's advice—to move for a change of venue was deficient under an objective standard of reasonableness or would have rendered different results.

42. The Court finds and concludes that venue was proper in Kanawha County and that the Petitioner's right to a fair trial was not violated.

43. The Court finds and concludes that the Petitioner exhibited a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and a rational, as well as factual, understanding of the proceedings against him.

44. The Court finds and concludes that the Petitioner was timely provided with impeachment evidence.

## DECISION

The Court does **ORDER** the *Petition* be **DENIED** and this action be **DISMISSED** and **STRICKEN** from the docket of this Court. The objection of the Petitioner is noted and preserved. The Clerk is **DIRECTED** to send a certified copy of this *Order* to the Kanawha County Prosecuting Attorney's Office and to the parties and counsel of record.

**ENTERED** this _15_ day of ~~March~~ April 2014.

_____
Louis H. Bloom, Judge

STATE OF WEST VIRGINIA
COUNTY OF KANAWHA, SS
I, CATHY S. GATSON CLERK OF CIRCUIT COURT OF SAID COUNTY
AND IN SAID STATE DO HEREBY CERTIFY THAT THE FOREGOING
IS A TRUE COPY FROM THE RECORDS OF SAID COURT
GIVEN UNDER MY HAND AND SEAL OF SAID COURT THIS
DAY OF
CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

4/4/14